## PETER D. SMITH v. A. W. DIBRELL.

Where the administrator of an estate sold land (at administrator's sale) and took a note, with personal securities and a mortgage on the land, to secure the payment, as required by the statute, (Paschal's Dig. Art. 1333, Note 499,) and the note was turned over to the heir as part of his inheritance, the guardian had no right to release the mortgage, cancel the note, and to take new and inferior security.

It is the duty of guardians to collect the debts due their wards and to recover the property to which they have claim or title, and to account to them for all rents, profits, and revenues; to lend money on mortgage under the approval of the county court, &c. (Paschal's Dig., Art. 3906.)

In equity the dealing of guardians with the estates of their wards is vigilantly watched; and while contracts and arrangements made by them for the interest of the ward, without the sanction of law, will be approved, yet, if such arrangement be to the detriment of the ward, the court will set it aside, or the ward may disregard it when he attains his majority.

Where the mortgage had been released, and a new security taken which could not be enforced, the court reversed the judgment and ordered the petition to be amended so as to foreclose the original mortgage.

APPEAL from Guadalupe. The case was tried before Hon. A. W. TERRELL, one of the district judges.

On the 4th day of November, 1850, Paris Smith, as administrator of Charles A. Smith, deceased, sold, under orders of the probate court, the land described in the petition, and one John I. St. Clair became the purchaser.

He executed his note to Paris Smith, administrator, for the sum of $1,082 50, with one A. N. Erskine and the appellee, Dibrell, as securities on it; he also, at the same time, executed a mortgage, to secure the payment of the note, on the land purchased by him. The note fell due twelve months after date.

Before this note was paid, the administration upon the estate of Charles A. Smith was closed in the probate court, and this note passed into the hands of P. D. Smith, the appellant in this case, as guardian of the minor heirs of the said Charles A. Smith.

On the 4th day of March, 1858, the appellant, in his capacity as guardian, made an arrangement with Erskine and the appellee, Dibrell, by which the sale of the land to St. Clair was practically canceled. The original note of St. Clair was delivered up and destroyed, and two new notes taken; the note of Erskine alone for one-half the amount then due, being the sum of $600 20, and the note of the appellee, Dibrell, for the like amount; and St. Clair under the arrangement, at the instance of appellant, Smith, conveyed the land in question to Dibrell and Erskine, and Smith at the same time released the lien of the mortgage in writing, and no new mortgage was taken, nor was anything said by any of the parties about any lien whatever.

The appellee, Dibrell, paid his note, and Erskine failed to meet his at maturity. The last note of Erskine above referred to was dated on the 4th day of March, 1858.

On the 15th of March, 1859, the interest of Erskine in the land was sold at sheriff's sale, and the appellee, Dibrell, became the purchaser. It is conceded that he knew the exact condition of the land, and was aware that Erskine had never paid the note. The land was then worth from $4 to $5 an acre. Dibrell bought it for the sum of $22.

On the 25th day of May, 1860, the appellant, Smith, in his capacity as guardian, instituted suit against Erskine on his note, and made Dibrell a party, and sought to foreclose

the vendor's lien upon the land.  There was no effort to foreclose the original canceled mortgage.  Judgment was rendered against Erskine for the amount of the note, but the court refused to enforce the vendor's lien or enter a decree of foreclosure, and dismissed the suit as to Dibrell. From this judgment Smith appealed.

*Hancock & West,* for appellant.—There is but one question in the case.  Has a guardian of minor heirs the power to release liens and direct the disposal of real estate of his wards without the intervention of the probate court?

It must be observed that in this case the guardian not only released the lien and canceled the mortgage, but he in fact sold and disposed of the real estate of his wards, for by the cancellation of the note of St. Clair, with Dibrell and Erskine as security, and releasing St. Clair from liability, though the legal estate still remained in St. Clair, the equitable title to the land reverted to the guardian of the minors, and the minors were, and would always be so regarded and treated in chancery as the real owners of the land.  The conveyance, then, by St. Clair, at the instance of the guardian, of the legal estate to Dibrell and Erskine, was no more nor less than a sale of the land by the guardian himself, in whom, for temporary purposes, the equitable title for the time being rested.

Guardians in this state are to a great extent creatures of the statute, and their duties, obligations, &c., are defined by the law.  (State Const. 1845, art. 4, sec. 15.)

In pursuance of this constitutional provision the legislature established the county court, and by the act of 16th of March, 1848, (Paschal's Dig., Art. 1226,) declared, "That said court shall have power, &c., to appoint guardians, settle their accounts, and transact all business pertaining to estates."

As to the construction that has been given to this broad and almost unlimited grant of power, see Alex-

xxxi—16

ander v. Maverick, 18 Tex., 194; Green v. Rugely, 23 Tex., 548..

By reference to the act of 20th March, 1848, concerning guardians, it will be seen that they are under the control of the probate judge.

Article 3908, Paschal's Digest, provides the mode to be pursued by a guardian in disposing of the real estate of his wards. (Judson v. Sierra, 22 Tex., 370; Yarborough v. Legget, 14 Tex., 667.)

*John Ireland,* for appellee.—In this case Smith sold the land at public sale, and St. Clair bought. Smith took a mortgage, and in order to get what he supposed to be better security, Erskine and Dibrell gave their notes in consideration of Smith's releasing the mortgage. Dibrell paid his half to subject the land in Dibrell's hands.

This would be a direct fraud.

Administrators, nor infants even, are exempt from the obligations of fair dealing. (Crayton v. Munger, 9 Tex., 285; 19 Tex., 180; Hunter v. Richardson, 1 Duval, 447; 11 B. Monr., 123.)

LINDSAY, J.—Under orders of the probate court of Guadalupe county, the administrator upon the estate of Charles A. Smith, deceased, sold a tract of land belonging to the estate, which was purchased by John I. St. Clair, who executed his note to the administrator for the purchase-money, with A. N. Erskine and A. W. Dibrell as his securities, taking also a mortgage upon the land sold, as prescribed by the statute. Before payment of the note the administration was closed, and this note, in the distribution of the estate, came to the hands of P. D. Smith, the appellant, as guardian of the minor heirs of Charles A. Smith, deceased.

This note was the property of the minor heirs, a part of the proceeds of their inheritance, which was known to and well understood by the appellee, A. W. Dibrell, one of the

sureties upon it.   It is made the duty of guardians by the statute to collect the claims or debts due to their wards, and to recover property to which they have claim or title, and to account to them for all rents, profits, and revenues which are or may become due to their estates.   If moneys are collected by them which are not applied to the support, maintenance, and education of their wards, the law requires them to put such money at interest upon mortgages on real estate, under the approval of the chief justice, or retain it in their own hands, with a like approval of the chief justice and the assent of their sureties.   This note was already at interest upon mortgage on real estate, and, if approved by the chief justice, the guardian was under no obligation to proceed to collect it till it was the pleasure of the obligors to pay it; when, according to his statutory obligation of duty, he was required to place it again in a similar condition.   Without the approval of the chief justice he had no legal right to release the mortgage to the vendee at the sale by the administrator, and thus attempt to confer upon him a right to convey the fee to Dibrell, the appellee, one of the sureties of that vendee at the administrator's sale. This arrangement of the guardian, in which he took the individual notes of the two sureties in lieu of the original note and released the mortgage executed by the vendee, finds no warrant either in law or in equity.   It accomplished, in legal contemplation, just nothing at all, and leaves the whole matter *in statu quo;* and no equities are created in favor of the sureties, except so far as they may have actually paid over any portion of the original purchase-money to the proper person for the use and benefit of those minor heirs.   This is the legal aspect of the case.

In equity the dealing of guardians with the estates of their wards is watched over with a vigilant jealousy by the chancellor.   And while the chancellor will often uphold and ratify contracts and arrangements made by the guardian which are for the interest of his ward, although there

may be no authority or express sanction of law for the special course he may have pursued, yet, if such contract or arrangement be detrimental to the estate of the ward, it is the province and the duty of courts of equity to vacate and set it aside. It is upon a similar principle of natural justice that the infant or minor, when he attains his majority, is permitted to make his election to adopt and confirm the contracts of his guardian without authority of law in and about his estate, when they are to his advantage, and to repudiate them if he deem them injurious. If the guardian sell the land of his ward without being authorized by law, the ward has his election to accept the price or reclaim the land when he comes of age, no matter who has become the purchaser. This being our view of both the law and the equity of the case, the infants, or minors, whose property is involved, occupy the position in court of wards of chancery, and it is the duty of the court to protect their interest in this litigation, by using its discretion, as the minors would have a right to use theirs at majority, in adopting or repudiating the act of the guardian in his formal release of the mortgage. Such release was obviously prejudicial to the interest of the minors, and ought to be repudiated. The guardian had no legal right to make it. The case is therefore reversed.

But as, from the view we take of the case, there is no vendor's lien, but the right rests in equity upon the mortgage, which is not made a part of the record, though admitted to exist in the pleadings, it is remanded, with instructions to the court below to grant leave to the plaintiff to amend his petition, by introducing the mortgage and seeking its foreclosure and the subjection of the land to the payment of the residue of the purchase-money due upon the mortgage executed at the administrator's sale.

REVERSED AND REMANDED.