## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

FERGUSON AND ALS. *v.* EPES, EX'OR, AND ALS.

May 10th, 1883.

Absent, *Hinton, J.**

1. EXECUTORS—*Legacy—Investment—Life tenant—Refunding bond—Case at bar.*—Executor fully administers testator's estate, and in 1860, had funds to pay the legacies, one being of $2,000, to S., an infant, remainder to C., in event S. died before marriage and without heirs of his body. From 1860 till S. was of age, there was no one authorized to receive it. In 1863, executor, by an *ex parte* order of court, invested the amount of the legacy in Confederate bonds, and delivered them to S., when of age, in settlement of the legacy, but took no refunding bond for their return. S. died unmarried and without heirs of his body, and insolvent.

HELD:

1. This was not money in hands of executor received in due exercise of his trust, within the meaning of the act authorizing investments in Confederate bonds; and the executor is liable to the remaindermen for the amount of the legacy.

2. Executor is liable to the remaindermen, in any event, for failing to take from S. proper security for the return of the fund in the event of his dying before marriage and without heirs of his body.

3. The purchase of the Confederate bonds by the executor was a *devastavit*, and receipt of the life tenant, S., could not effect the right of the legatees in remainder.

Appeal from decree of circuit court of Nottoway, rendered at

---

* Judge Hinton had been of counsel for the appellants.

·its April term, 1880, upon a bill of review wherein James H. Ferguson and Sarah C., his wife, Grief T. Cralle, Jr., and Mary A. Hatchett, were plaintiffs, and H. H. Epes, administrator of Travis H. Epes, deceased, R. S. Epes, administrator of T. H. Campbell, deceased, and Thomas J. Owens, administrator of James A. Scott, deceased, were defendants.

In 1859, Mary Carter died in Nottoway, testate, and Travis H. Epes qualified as her executor. Early in 1860 he had fully administered the estate, except paying certain legacies, one of $2,000, being to Edwin and James A. Scott, infant grandsons of testatrix. The will provided, that if either of these legatees died before marriage, or without heirs of his body, his legacy should pass to survivor; and if survivor died before marriage and without heirs of his body, it should pass to Sarah Cralle, a daughter of testatrix, if living, and if not, to her children. In 1859 Edwin died, under age, unmarried and without issue. Their guardian died soon after the executor, Epes, qualified, and the place was not supplied. In 1863, under act of assembly of March 5th, of that year, authorizing fiduciaries to invest funds in their hands as such, in Confederate states bonds, the executor obtained from the judge of the circuit court of Nottoway an order to invest the $2,000 in such bonds, and did purchase two such bonds of $1,000 each. James A. Scott was of age in August, 1863. In February, 1864, the executor gave him the two bonds without taking from him a refunding bond, or other security for their return. In 1869 James A. Scott died unmarried and without issue and insolvent. In 1876, the appellants, children of Sarah Cralle, who had died in 1862, filed their bill against the executor and his sureties, alleging their liability to them as remaindermen under the will of the testatrix, for the amount of the said legacy. The circuit court dismissed the bill. In 1879 the appellants filed a bill of review, which was also dismissed. From the decree dismissing the bill of review, the plaintiffs appealed.

*George S. Bernard,* and *R. H. Jones, Jr.,* for the appellants.

*James F. Epes,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The facts disclosed in the record are these: Mary Carter died in the year 1859, leaving a will which was admitted to record in the county court of Nottoway. At the July term 1859 of the said court, Travis H. Epes, duly qualified as the executor of the will of said Mary Carter, with sureties in his official bond, in the penalty of $65,000; and, early in the following year (1860), he had fully administered her estate, except as to a legacy of $2,000, and other legacies not necessary to be mentioned.

The said legacy of $2,000 was given by the testatrix to her grandsons, Edwin Scott and James A. Scott, with the proviso, that if either should die before marriage without heirs of the body, it should go to the survivor; and, if the survivor should die before marriage, and without heirs of the body, it should go to her daughter, Sarah Cralle, if alive, and, if dead, to her children. In 1859, Edwin Scott died, before marriage, without heirs of his body, and under age. In 1862, said Sarah Cralle died, leaving children who would be entitled to the said legacy of $2,000, in the event, that James A. Scott, the surviving grandson, should die before marriage, without heirs of his body. About 1869, said James A. Scott died unmarried, and without issue. Whereupon the children of Sarah Cralle, deceased, became entitled to the said legacy. They are the appellants here. When said Travis H. Epes qualified as executor of the will of Mary Carter, as aforesaid, both of the life tenant legatees, Edwin Scott and James A. Scott, were infants; and, their guardian soon dying, there was no one to whom the said executor could have made payment of the said legacy, till the 24th of August, 1863, when said James A. Scott became of age. Previous to

this, however, the said executor had obtained an order from the circuit judge of Nottoway, by virtue of the act of assembly passed March 5th, 1863, entitled an "act authorizing fiduciaries to invest funds in their hands, in certain cases, and for other purposes," directing him to invest the fund in his hands in Confederate states bonds; and, accordingly, he did purchase two Confederate states bonds, each for $1,000; and, on the 15th day of February, 1864, the said executor delivered the said two bonds to the authorized agent of said James A. Scott, in full settlement of the said legacy of $2,000.

The said James A. Scott, life tenant of the said legacy, died insolvent; and the said executor, having failed to take the proper security (or any at all, indeed) from the said life tenant, Scott, for the forthcoming, at his death, of the said legacy, to be paid over to the legatees in remainder under the said will of Mary Carter, was sued upon his official bond by the said legatees in remainder in the circuit court of Nottoway county, at the March rules, 1876.

The bill of complaint set forth the death and insolvency of the life tenant, James A. Scott, and charged the liability of the said executor, Travis H. Epes, under the will of the testatrix, Mary Carter, deceased, to pay over to the legatees in remainder the said legacy of $2,000, and prayed for an account against the said executor and the settlement of his administration, and asked for a decree against him and his sureties in his official bond.

The answer of the executor was filed, setting forth the payment of the said two Confederate States bonds, each for $1,000, February 15th, 1864, to the agent of the said James A. Scott as a full discharge of all liability of the said executor for the said legacy.

At the October term, 1877, a decree was entered, ratifying the payment of the said Confederate states bonds made by Travis H. Epes, executor of the will of Mary Carter, deceased, to James A. Scott, surviving life tenant of the said legacy of $2,000, and dis-

charging him and his sureties from all liability for the said legacy to the legatees in remainder, and dismissed the bill of complainants, with costs.

At the September term, 1879, the complainants asked leave to file their bill of review, which was controverted by the respondents; and at the April term, 1880, leave was given them to file their *bill of review*, to which the respondents demurred; and, thereupon, the court being of opinion that there was no error of law in the proceedings in the said original cause, but that the decree of October, 1877, dismissing the original bill was right, and the proper decree which ought to have been rendered in said cause, sustained the said demurrer to the said bill of review, and dismissed the bill of review with costs, and ordered the said suit of *Ferguson and Wife et als.* v. *T. H. Epes, ex'or, et als.*, to be again stricken from the docket.

We are of opinion that the circuit court erred in dismissing the bill of review, wherein the complainants prayed the court to review and reverse the decree entered by the said court, October term, 1877, for the error apparent on the face of the said decree, in declaring, in the opinion of the court, that the payment made by T. H. Epes, executor of Mary Carter's will, to James A. Scott, the surviving life tenant of himself and Edward Scott, of the said Confederate states bonds for $2,000, was in full discharge of all liabilities against the said executor; and in dismissing the bill of complaint, and decreeing costs against complainants.

The main, and indeed the only controversy in the original suit, was the question of the liability of the executor, T. H. Epes, under the will of his testatrix, Mary Carter, deceased, for the legacy of $2,000, given for life to the Scotts, to the remaindermen, who are the children of Sarah Cralle, deceased, and the appellants here. The record shows that in July, 1860, twelve months from the date of his qualification, the said executor held in his hands $2,000, in good money, equivalent to gold, with which to pay the pecuniary legacy given by the will

to Edwin and James A. Scott, for life, with contingent remainder over.

The money which, in 1863, he paid for the two Confederate states bonds, was neither Confederate money "*in hand,*" nor received by him in due course of his trust, within the meaning of the act of assembly under which he obtained the ex parte order to purchase the bonds.

It is true that from January, 1860, to August, 1863, when said James A. Scott was an infant, there was no lawful hand to whom the executor could have, paid this $2,000; but this circumstance did not release him from liability. A like defence was set up by the executor of Peter Crickard in the case of *Crickard's Executor* v. *Crickard's Legatees,* 25 Gratt. 410. Judge Christian, delivering the opinion of the court in that case, said: "The law makes it the duty of an executor, after he has paid the debts of his decedent's estate, to pay over the legacies bequeathed by the will to those entitled to receive them, within a reasonable time. If the legatees are so situated, or from any other cause there is no hand to receive the legacies from the executor, then it is his plain duty to invest the fund in safe interest-bearing securities, to await the time when they can be paid over to the legatees. If the executor fails to do this, and retains the money in his own hands, he thereby becomes a debtor to the legatee, chargeable with legal interest; and he cannot, any more than any other debtor, discharge his debt in *a depreciated* currency, when he received a *sound* currency, but must pay in the same currency which came into his hands, or in one of equal value."

More than three years after this executor of Mary Carter's will received this legacy of $2,000 in gold, or its equivalent, and after all the debts had been paid, and the estate fully administered, except this legacy, he obtained an *ex parte* order, made in vacation and without notice, giving him leave to invest this legacy in Confederate bonds, even then well nigh worthless; and then made haste to pay these Confederate bonds over to the

life tenant, James A. Scott, (who had just become of age) in full discharge of his whole liability, even over to the legatees in remainder. It is true, that Scott, it seems, took the bonds in discharge of *his* right to be paid in gold, and gave a receipt in full for the legacy of $2,000 to the executor ; but this transaction did affect, and could affect, no one else of the parties interested but himself.

The purchase by the executor, Epes, of the Confederate states bonds in 1863, with trust funds that had been in his hands for over three years, was a *devastavit* of the fund, and the receipt given him by Scott, the life tenant of the legacy of $2,000, could not affect the right of the legatees in remainder; and this would be true, even if he had paid the said Scott in gold, for it was his duty to have taken from him (in any event) ample and good security for the forthcoming of the $2,000 legacy to the legatees in remainder, upon the event of Scott's death, unmarried and without issue of his body.

The decree of the circuit court of Nottoway, appealed from, of April, 1880, dismissing the bill of review filed by appellants, must be reversed and annulled for the reasons stated; and this court is further of opinion, that there was error in the decree of the said court of October, 1877, and that it must be reversed and annulled, with costs. And this cause is remanded to the said circuit court, with directions to reinstate the original cause on its docket, and to proceed according to the views herein expressed.

The decree is as follows :

The court is of opinion for reasons stated in writing and filed with the record, that the decree of the circuit court of April, 1880, dismissing the plaintiffs' bill of review, was absolutely erroneous ; and that the decree of September term, 1877, dismissing the original bill of the plaintiffs in the cause was also erroneous. This court being of opinion that the defendants are

liable to the plaintiffs for the legacy of $2,000, bequeathed in the will of Mary Carter to Edwin Scott and James Scott for life, and in default of issue of the body, of the said Edwin Scott and James Scott, then to the daughter of testatrix, Sarah Cralle, if alive, and, if not, to her children; and that the said circuit court should have decreed against the said defendants, in favor of the said plaintiffs the said $2,000, with interest from the date of the death of James A. Scott.

It is therefore decreed and ordered that for the errors aforesaid the decrees be reversed and annulled; and that the appellants recover against the appellees their costs by them expended in the prosecution of their appeal here; and it is ordered to be certified to the said circuit court of Nottoway county, with instruction to said court to decree the payment of the said $2,000 by the defendants to the plaintiffs, with interest as aforesaid; which is ordered to be certified to the said circuit court.

DECREE REVERSED.