## THE INTERNATIONAL TRUST COMPANY, AS TRUSTEE, v. ORD PRESTON, GUARDIAN.

### IN THE MATTER OF THE ESTATE OF CLARANCE W. HICKS, DECEASED.

(No. 820; Decided May 1st, 1916; 156 Pac. 1128.)

MANAGEMENT OF TRUST PROPERTY—TRUSTS—LIMITATION OF TESTA-MENTARY TRUST—PROBATE JURISDICTION—INVESTMENTS BY TRUS-TEE — CONSENT OF LIFE TENANT — CONSENT OF CESTUI — LOSS — RATIFICATION—APPROVAL OF ANNUAL REPORTS—OBJECTIONS TO RE-PORT OF TRUSTEE—PROCEEDINGS TO SURCHARGE TRUSTEE.

1. Where a will creating a trust directs that trust funds be invested in the public bonds and securities of the United States of America, or of a state or municipality therein, if investment is made in securities of a foreign country, the amount so invested will be surcharged to the trustee.

2. The consent or approval of a life tenant of a trust without power of appointment or other disposition of the remainder, of an unauthorized investment of trust funds, cannot estop the remainder men from objecting thereto.

3. To establish a ratification by *cestui que* trust, the fact must not only be clearly proved, but it must be shown that the ratification was made with full knowledge of all the ma-

terial particulars or circumstances, and of his or her legal rights in the matter.

4. Where a will expressly limits the investment of trust funds to certain securities, it is not within the power of a court to change the terms of a trust in that particular, by approving unauthorized investments.

5. The approval of a guardian of minor *cestuis* of an investment made in violation of a trust created by will is not binding upon the minors.

6. Where a trustee invests funds in a manner violating the express provisions of the will creating the trust, the approval by a court of the annual reports of the trustee is not final, or *res adjudicata*, for the court itself is without power to authorize such investment.

7. In a proceeding founded upon objections to investments made by a trustee under a will, where the court has jurisdiction over the trust estate and the trustee is before the court, an objection made on appeal that beneficiaries, not complaining are not represented, will not be considered, since it was the duty of the court, upon learning that the trustee was violating the terms of the trust, to call it to account and to make any order necessary for a faithful execution of the trust.

ERROR to District Court, Laramie County; HON. WILLIAM C. MENTZER, Judge.

Hearing had upon objections filed by Ord Preston, guardian, to an investment of trust funds by the International Trust Company, as trustee. From an order surcharging the trustee with the amount of said investment it brings error. The material facts are stated in the opinion.

· *Hughes & Dorsey, W. E. Mullen,* and *E. I. Thayer,* for plaintiff in error.

The context of Paragraph Fifth of the will establishes the intention of the testatrix to authorize the trustee to exercise a discretion in the selection of investments. This intention is also made apparent by Paragraphs Seventh and Eighth of the will; the trustee acted within the power conferred by the will and exercised a sound discretion as well as good faith and honest judgment; the investment had

the consent and approval of the beneficiaries and of the court for many years prior to the protest; there is no evidence to show any loss whatever sustained by the trust estate by reason of the Mexican bonds except the testimony of Preston, guardian; the trustee acted within the terms of the will. (Willis v. Brancher, 79 Ohio State 290, 87 N. E. 185.) The question of lawfulness and fitness of the investments is to be judged at the time it was made. (Brown v. French, 125 Mass. 410, 28 Am. Re. 254; Baker v. Fooks, 8 Del. Chy., 84, 67 Atl. 969.) A trustee is protected if he exercises honest and sound discretion with regard to investments. (Nagel v. Robbins, 9 Wyo. 211, 62 Pac. 154.) Breach of trust was waived, if any, by the natural parent or guardian of the *cestuis que trustent.* (39 Cyc. 413.) The doctrine of estoppel applies. (39 Cyc. 519-520; 1 Perry on Trusts (5th Ed.) Sec. 467.) Where the ward has an election between alternative rights or remedies, the guardian can exercise the necessary election on his behalf. (15 Am. & Eng. Ency. of Law (2nd Ed.), 72; Lamar v. Micou, 112 U. S. 452.) A guardian is not an insurer of the safety of investments and if he acts in good faith, he will not be liable for pecuniary loss. (21 Cyc. 73, 83-84, 87-89.) The investment was approved by Fannie Converse Preston, mother of the minors, as early as 1905 and by Ord Preston, during the years 1912 and 1913. The guardian had authority to appear in the lower court on behalf of his wards and approve the investment. (Redmond v. Peterson, 102 Cal. 595; Wrisley v. Kenyon, 28 Vt. 6; Smith v. McDonald, 42 Cal. 484; Gronfier v. Puymirol, 19 Cal. 629; Ewing v. Hollister, 7 Ohio (pt. 2), 138; Simpson v. Belbin, 37 Tex. 674; Ankeny v. Blackiston, 7 Ore. 407.) The guardian is estopped to deny his authority to waive the breach of trust. (15 Am. & Eng. Ency. of Law (2nd Ed.) 76; 21 Cyc. 108-109; 16 Cyc. 684.) The court orders approving reports of trustee are conclusive. (Comp. Stats. 1910, Section 5594.) The probate court had jurisdiction in the premises. (Comp. Stats. 1910, Section 5400; Lethbridge v. Lauder, 76 Pac.

682 (Wyo.).) Section 5594 was adopted from California where it had been construed by the courts of that state. (Estate of Cahalan, 70 Cal. 604, 12 Pac. 427; Reynolds v. Brumgan, 54 Cal. 254; Washington v. Black, 83 Cal. 294, 23 Pac. 300; In re. Cout's Estate, 87 Cal. 480, 25 Pac. 685; In re. Fernandez's Estate, 119 Cal. 582, 51 Pac. 851; In re. Pratt's Estate, 119 Cal. 156, 51 Pac. 47; Crew et al. v. Pratt, 51 Pac. 38 (Cal.); Crew v. Pratt, 51 Pac. 47 (Cal.).) In a hearing on an administrator's third account, it was error to set aside a former order settling the second account, from which there had been no appeal. (Estate of Grant, 131 Cal. 426, 63 Pac. 731; In re. Wells' Estate and Guardianship, 73 Pac. 1066 (Cal.); In re. McDougald's Estate, 79 Pac. 879 (Cal.).) Approval orders are not subject to collateral attack. (L. Harter Co. v. Geisel, 122 Pac. 1095 (Cal.); Lethbridge v. Lauder, 13 Wyo. 9, 76 Pac. 682; Rice v. Tilton, 14 Wyo. 101, 82 Pac. 579.) Probate orders are proceedings in rem which conclusively determine the rights of all parties whether then in being or not. (Ladd v. Weiskopf, 69 L. R. A. 785 (Minn.).)

*Herbert V. Lacey* and *John W. Lacey,* for defendants in error.

Counsel contend that the provisions of the will conferring broad powers as to the control and management of the property, including power to sell and convert the same, authorized the investment in Mexican bonds. In doing this counsel ignore the chief provision of the will in relation to investments, which are separated distinctly from other matters mentioned in the will; but it is manifest that the provisions of the will cannot be stretched or distorted into general authority to the trustee to use discretion in the matter of investments. The position is not sustained by Willis v. Brancher, Brown v. French nor Baker v. Fooks, involving wills expressly conferring discretion as to investments. Nagel v. Robbins did not involve a trust instrument fixing bonds within which discretion should be exercised, yet one of the loans was disapproved by the court and surcharged.

The directions given in the instrument must be strictly followed. (1 Perry on Trusts, Section 460, Page 475; Womack v. Austin, 1 S. Car. 421, 438; Sanders v. Rogers, 1 S. Car. 452, 457; Ringgold v. Ringgold, 1 Harris & Gill (Md.) 11, 68; Bateman et al. v. Davis et al., 3 Maddock 98; Bannister and wife v. M'Kenzie, 6 Munford (Va.) 447.) The breach of trust was not waived; the rule of *strictissimi juris* does not apply to corporations in their administration of trusts. (Empire State Surety Co. v. Lindenmeier, (Colo.) 131 Pac. 437, 440; Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 426; Chicago Lumber Co. v. Douglas, (Kan.) 131 Pac. 563, 568; Hormel v. American Bonding Co., 33 L. R. A. 513.) The life tenant cannot concur any breach of trust before his or her interest falls into enjoyment. (2 Perry on Trusts, Section 849.) While a *cestui que* trust may waive a breach of trust his release, confirmation, waiver or acquiescence must have been made upon full knowledge of all the facts and his rights under the law. (2 Perry on Trusts, Section 851.) Preston as guardian was without authority to release or waive the breach. (Woerner on Guardianship, Page 173; Blaubelt v. Van Winkle, 29 N. J. Eq. 111; Freiberg v. DeLamar, et al. (Tex.) 27 S. W. 151; Brown, et al. v. Fidelity, &c. Co. (Tex.) 76 S. W. 944; Hite's Executor v. Hite's Legatees, 3 Randolph (Va.) 409; Forbes' Heirs v. Mitchell, et al., 1 J. J. Marshall (Ky.) 441; Woerner on Guardianship, Page 164-192.) The principle of estoppel has no application. The California statute which is similar to Comp. Stats. 1910, Section 5594, must be read in connection with several other sections of the California law which were not adopted by Wyoming and which have no counterpart in this state. Deering's Code, Section 1638, 1633, all of which require notice to be given before current accounts, are made conclusive by the California section resembling Section 5594 of our statutes. In Wyoming current reports are filed and approved without notice; final accounts are settled with full notice and the section might apply as to them. The earlier cases cited from California were upon

final accounts. The approval of current accounts is not conclusive. (Vinson v. Vinson, 1 Delaware Chancery 120; Seawell v. Greenway, 22 Tex. 691, 694; Boynton v. Dyer, 18 Pick. 1; Blake, et al. v. Pegram, et al., 101 Mass. 592, 598; Longley v. Hall, 11 Pickering (Mass.) 120, 124; Stetson, Guardian, v. Bass, Executor, 9 Pick. (Mass.) 26, 29; Bachelor v. Schmela, (Neb.) 68 N. W. 378, 380; Fraim, Executor, v. Millison, 59 Ind. 123, 129; Bliss v. Seaman, (Ill.) 46 N. E. 279, 281; Musick v. Beebe, 17 Kan. 47, 52; Boales, et al. v. Ferguson, (Neb.) 76 N. W. 16, 19; Griggs, et al., Trustees, v. Shaw, et al., (N. J.) 9 Atl. 578; Jackson v. Reynolds, 39 N. J. Eq., 313, 315; In re. Long Island Loan & Trust Co., 78 N. Y. Supp. 65, 67.) The rule has been adopted by this court. (Nagle v. Robbins, 9 Wyo. 211, 231.) The following additional memorandum was presented at the time of the argument:—Authorities on the principle of estoppel:—First Nat. Bank v. Ragsdale, (Mo.) 71 S. W. 178, 182; Davis v. Pryor, (C. C. A. 8th Cir.), 50 C. C. A. 579, 582, 112 Fed. 274, 278; Dickerson v. Colgrove, 100 U. S. 578, 580; Thompson v. Sioux Falls National Bank, 150 U. S. 231, 244; Steel v. Smelting Co., 106 U. S. 447, 455. Rule as to character of investments permitted when trust instrument authorizes investment at the trustee's discretion:—Pabst v. Goodrich, (Wis.) 113 N. W. 398, 406; 1 Perry on Trusts, (1911 Ed.) Sec. 460, P. 747. As to the power and authority of a guardian concerning an estate placed in the hands of trustee as here:—Estate of Alexander Young, Deceased, 17 Phila. Rep. P. 511. Upon the matter of notice:—(a) The notice required as to final accounts, Laws 1915, Page 52; (b) Our only statute for notice upon infants requires that the infant be served as well as the parent or guardian, Compiled Statutes of 1910, Sec. 4395.

*Hughes & Dorsey, W. E. Mullen* and *E. I. Thayer,* in reply.

A careful study of the will does not disclose that the matter of investments is separate and distinct from other mat-

ters mentioned in the will, as to the exercise of discretion by the trustee. The breach of trust, if any, was waived; there is no analogy between a surety company and a trust company; the guardian is estopped to deny authority to waive the breach of trust, if any. The controversy here is between the trustee and the guardian. If the minors have an election to sue the trustee, the right should not be exercised by the guardian but by a guardian *ad litem* or next friend. Section 5594, Comp. Stats. 1910, applies. The District Court approval orders were entered after hearing on notice; all parties interested were notified and in fact endorsed the trustee's reports so that the contention that current reports are made without notice is not supported by the facts. Rice v. Tilton was cited in our original brief in support of the principle that orders approving annual reports of an administrator or trustee are not subject to collateral attack. This investment has stood and has been annually approved for many years. The present protest is made to the report of 1914 only. The sections of the California probate law and decisions construing the same clearly support our contention that annual reports repeatedly approved by the District Court are not subject to collateral attack. Trustees are governed by the probate code. The authorities cited by defendant in error to the effect that orders approving current reports are not conclusive are from states where the probate law is unlike that of Wyoming.

BEARD, JUSTICE.

In this case the facts upon which the decision must be based are not in dispute and are as follows: September 12, 1899, Clarance W. Hicks died, leaving surviving her Jane H. Swan, her mother; Martha C. Andrews, her sister, and Fannie J. Converse, her daughter. October 28, 1899, the last will and testament of said Clarance W. Hicks, deceased, was admitted to probate in the District Court of Laramie County, Wyoming. The provisions of said will in so far as they are involved, or have any bearing upon the questions to be here determined are as follows:

"Fourth. I give, devise and bequeath unto my Trustee, hereinafter named, and to his successor and successors in trust, according to the nature thereof, all the rest, residue and remainder of my estate, real and personal, of which I shall die seized and possessed, after the payment of my debts and the expenses of administration, together with the bequests hereinbefore made, in trust for the following purposes:

"1st. To pay unto my beloved mother, Jane H. Swan, for and during the term of her natural life, the sum of Three hundred dollars annually;

"2nd. To pay unto my sister, Martha C. Andrews, for and during the term of her natural life, the sum of Three hundred dollars annually;

"3rd. To pay unto my cousin, Nellie McMurtrie, of Cedar Springs, Michigan, the sum of Five hundred dollars in one payment;

"4th. To pay to my said daughter, Fannie J. Converse, all and singular the net income and earnings of said trust estate herein created, remaining after the payment of the said gift to said Nellie McMurtrie, and the payment of the two annuities to said Jane H. Swan and Martha C. Andrews, and all expenses incident to the said trust, including trustee's fees; said payments to be made at stated periods, quarterly if possible, and at least annually for and during the term of her natural life. And should my daughter aforesaid survive either or both of the said Jane H. Swan and Martha C. Andrews, then and in that case the amount of such annuity or annuities shall be included in the said payments to my said daughter.

"5th. If my said daughter, Fannie J. Converse, shall survive the last survivor of the aforesaid Jane H. Swan and Martha C. Andrews, then upon the decease of my daughter aforesaid leaving children her surviving, my said trustee shall convey all the remaining part of my estate hereinbefore conveyed to him, to such Trustee, together with any income of the same remaining in his hands, to the sur-

viving children of my said daughter Fannie J. Converse—the children of any deceased children taking collectively and by way of representation the share which their parent would have taken if living in equal parts.

"6th. If my said daughter, Fannie J. Converse, shall not survive them the said Jane H. Swan and Martha C. Andrews, but shall upon her my said daughter's decease, leaving children, or the children of deceased children her surviving, then the said remainder of the net income and net earnings of said trust estate shall be paid to and for the use and benefit of my said daughter's children, quarter-yearly, and at least annually; such payments in that case to continue to such children during the life time of them the said Jane H. Swan and Martha C. Andrews, or the survivor of them; then upon the decease of the last survivor of them the said Jane H. Swan and Martha C. Andrews, my Trustee under this clause shall convey all the remaining part of my estate hereinbefore conveyed to him as such trustee, together with any income of the same remaining in his hands, to the surviving children of my said daughter and the children of any deceased child of my said daughter —the children of any deceased child taking collectively and by way of representation the share which their parent would have taken if living—in equal parts.

"7th. Upon the termination of the annuities hereinbefore named, my said Trustee shall convey all the remaining part of my estate hereinbefore conveyed to him, as such Trustee, together with any income of the same remaining in his hands, to such persons, and in such manner as I shall hereafter direct by and in a codicil to be hereafter added and annexed; and if I shall die without having any such codicil as aforesaid, and if my said daughter, Fannie J. Converse, shall upon her decease, leave no children, nor any children of any deceased child, her surviving, then upon the termination of the annuities hereinbefore named, my said Trustee shall convey all the remaining part of my estate hereinbefore conveyed to him as such Trustee, together with any

income of the same remaining in his hands, to such persons as, under the Statutes of the State of Wyoming, governing the distribution of the effects of intestates, would have become entitled to my personal estate at my death if I had died intestate and without leaving any children, or any children of my deceased child, me surviving.

"Fifth. My said Trustee shall have full control, care and management of the property hereinbefore conveyed to him as such Trustee, and said control, care and management, as well as all other powers herein bestowed upon said Trustee, shall be exercised by him for the good and benefit, and for the preservation of the trust estate hereby created. I authorize and empower my said Trustee, if in his judgment it shall seem advantageous to do so, to sell and convert the property, real and personal, hereinbefore conveyed to him as such Trustee, or any part trereof, at public or private sale, at such times, and upon such terms and in such manner, as to him shall seem meet and best; and he shall have power, upon any such sale, to convey, transfer and assign unto the purchaser or purchasers the property so sold. I authorize, empower and direct my said Trustee to invest and keep invested in the public bonds and securities of the United States of America, and in the public bonds of any State or of any municipality in any State of the United States of America, all and singular the principal of said trust funds and not the net income and earnings thereof. All of the said bonds and securities shall be taken in the name of my said Trustee, as such Trustee, and shall constitute and remain a part of the trust estate herein created, and shall be held upon the same trusts and be finally disposed of by my said Trustee.as and like the property hereinbefore conveyed to him as such Trustee. I authorize and empower my said Trustee to continue any investment which I may leave at my decease, so long as in his judgment the same shall be expended and of advantage to the said trust estate. I direct that my said Trustee shall be required to render and make under oath, each and every year after my

decease, unto the tribunal having jurisdiction over trustees and trust estates of the nature herein created, a full, true and complete statement and account of all property, moneys and effects coming into his hands as such Trustee, and of all moneys paid out by him in that capacity, as well as of his other transactions in the management of said trust estate in his hands. During the continuance of the said trust estate the Trustee thereof shall be permitted to retain out of the estate in his hands as a compensation for his services in the management thereof, such an annual sum as shall be allowed and fixed from time to time by the Court to which he is required to report as aforesaid.

"Sixth. I nominate and appoint my beloved husband Truman B. Hicks to be my Trustee under this will, and in case he shall fail or refuse to accept the said trust, or in case he shall accept said trust and shall thereafter cease by death or otherwise to be such trustee, before the said trust shall have been fully executed, then and in either of such cases, the proper tribunal shall fill the vacancy thus existing, to the end that there shall always be a Trustee to manage the trust estate herein created, after the death, disability or refusal to act of said Trustee, Truman B. Hicks.

"Seventh. In the event of an entire failure of a Trustee under my said appointment, the proper tribunal shall supply and keep supplied a Trustee until all the aforesaid trusts shall have been fully executed; and the Trustee appointed by the Court shall be subject to the same duties and restrictions, and shall have the same direction and authority and powers which are herewith imposed and conferred upon the said Trustee named under this Will. Upon every such succession or appointment of Trustees as herein provided, the necessary assurances shall be executed for vesting the trust estate and the property belonging thereto in the new trustee thus succeeding to the trust.

"Eighth. I hereby declare that the receipt of the Trustee for the time being under this Will, for the purchase money of any property hereby directed or authorized to be sold, or

for any money paid, or for any stock, funds, or securities transferred to him by virtue of this Will, or in execution of any of the trusts or powers contained in this Will, shall effectually discharge the person or persons paying or transferring the same therefrom, and from being bound to see to the application, or being answerable for the loss or misapplication thereof. And I direct that the said Trustee shall not be answerable by virtue of or under the trusts reposed in this Will except for his own actual receipts, acts, neglects and wilful default. * * *"

March 1, 1901, plaintiff in error, The International Trust Company, was appointed trustee under said will, and since that date has continued to act and still is acting as such trustee. June 7, 1902, Fannie J. Converse and Ord Preston were married. In 1903 or 1904 Jane H. Swan died. May 1, 1904, Mary Ord Preston, daughter of Ord and Fannie J. Converse Preston, was born. September 24, 1907, Eleanor Converse Preston, daughter of Ord and Fannie J. Converse Preston, was born. In September, 1911, Fannie J. Converse Preston died. September 25, 1911, Ord Preston was appointed by the Surrogate of the Orphans' Court of Bergen County, New Jersey, guardian of Mary Ord Preston and Eleanor Converse Preston, minor children of Fannie J. Converse Preston, deceased. January 14, 1905, said trustee invested of the trust funds then in its possession $9,500.00 in £2,000 United States of Mexico 4% bonds of 1954. That investment is the subject of the present controversy, and in the district court the report of the trustee as to that investment was disapproved and the amount thereof surcharged to the trustee. From that decision the trustee brings error.

Three questions are presented for consideration. 1. Was the investment in Mexican bonds a violation of the trust?. 2. Could Fannie J. Converse Preston in her lifetime, or Ord Preston, as guardian, waive a breach of the trust and ratify an unauthorized investment of the trust funds? 3. Was the approval by the district court of the annual reports of the trustee final and conclusive?

The provision of the will with reference to the control, care, management and sale of the property, and the kind of securities in which the trustee was authorized to invest the trust funds are found in the fifth paragraph of the will. It is apparent that the first sentence of that paragraph was not intended by testatrix to invest the trustee with unlimited discretion for the very obvious reason that in the same paragraph the general language is followed by clear, explicit and positive directions as to the kind of securities in which the funds were to be invested and kept invested. There is no uncertainty or ambiguity in the language used by the testatrix in that respect. "I authorize, empower and direct my said Trustee to invest and keep invested in the public bonds and securities of the United States of America, and in the public bonds of any State or of any municipality in any State of the United States of America, all and singular the principal of said trust fund and not the net income and earnings thereof." To our minds that language clearly excludes the idea that the trustee was given discretion to invest the trust funds in the securities of a foreign country. That is not only our construction of the will, but was also the construction placed upon it by the plaintiff in error long before the purchase by it of the Mexican bonds in question. On March 24, 1902, the Secretary of the Trust Company wrote Fannie J. Converse as follows: "After receiving your favor of the 20th inst., we were proceeding to invest the funds of the estate, as per your approval, when we thought best to refer to the will. We now note by its terms that the funds of the estate must be invested in Government or State bonds, or the bonds of municipalities. This is rather unfortunate, in that it will necessarily cut down the income, as these securities pay a lower rate of interest than those of corporations." And again on April 4, 1902, the Vice President of the Trust Company wrote Miss Converse as follows: "Your favor of the 1st inst. has been carefully noted. We appreciate the necessity of securing as large an income as possible on this fund, with due regard

to the safety of the principal. The difficulty is that we are limited to municipal bonds, and this class of securities has been in such demand that the interest rates are steadily being lowered." Even in those cases where the instrument creating the trust conferred upon the trustee as wide discretion as that contained in the first sentence of paragraph Fifth of the will in this case, and containing no such restrictions as those found in said paragraph, it has been generally held that investments by a trustee in property or securities beyond the jurisdiction of the court, unless authorized by the instrument, are unauthorized and constitute a breach of the trust. (Pabst v. Goodrich, 133 Wis. 43, 113 N. W. 398, 14 A. & E. Ann. Cases, 824, and cases cited in note; McCullough's Executors v. McCullough, 44 N. J. Eq. 313, and note; 14 Atl. 642; Ormiston v. Olcott, 84 N. Y. 339.) But where, as in the present case, the instrument creating the trust directs the class of securities in which the trust funds are to be invested and kept invested, if the trustee invests the funds in other bonds or securities he does so at his risk and must abide· by the consequences. (1 Perry on Trusts and Trustees (6th Ed.) Sec. 460; Womack v. Austin, 1 S. Car. 421; Banister and Wife v. McKenzie, 6 Munford (Va.) 447; Ihmsen's Appeal, 43 Pa. St. 431; 7 M. A. L. bottom p. 325.) That the investment in Mexican bonds by the trustee was unauthorized and in violation of the terms of the will we entertain no doubt; and the amount so invested was properly surcharged to the trustee, unless it is relieved for reasons now to be considered.

The trustee reported annually to the district court; and it was admitted on the trial that these Mexican bonds were shown in the report covering the period from April 6, 1904, to March 1, 1905, and in each annual report thereafter; and that said reports up to and including that ending February 15, 1913, were approved by said court in the following language, (except as to period covered): "Now on this day comes The International Trust Company, Trustee, and presents to the Court the report of its acts and doings in refer-

ence to said estate, from (for?) the period from March 1st, 1907, to March 1st, 1908, and the Court having examined said report and audited same, and being fully advised in the premises, doth hereby approve said report." January 9, 1905, the Secretary of the Trust Company wrote Mrs. Preston as follows: "After careful consideration, we have decided to purchase for the Hicks Estate $10,000 U. S. of Mexico 4% Gold Bonds at 95 and interest, as per description inclosed. These bonds are highly accredited in New York and other centers, and we are very sure they will prove a very satisfactory investment." February 28, 1906, Mrs. Preston wrote, acknowledging the receipt of a copy of the trustee's report of March 1, 1906, and stated, "of the list of securities belonging to the estate there is one block of bonds not within the provisions of my mother's will, namely, U. S. of Mexico 4s. I consider them perfectly safe and am willing the estate continue to hold them." When the report for the year ending March 1, 1907, was received by mail by the judge of the district court, he wrote the trustee that he would not approve it without either a waiver and approval from the *cestui que trust,* stating that the securities mentioned in the report were in existence and of the value claimed, and that all the investments were accepted and sanctioned; or that an attorney of this state be employed who could assure him that he had investigated the securities and that they were of the value claimed. That he had no personal knowledge of their value or whether they were good ones or bad ones. That "if Mrs. Preston was willing to approve of the investments made and waive any claim to their being in existence, that would cover the matter entirely." The trustee procured a certificate from Mrs. Preston that she was satisfied that the trustee held the securities mentioned in the report; that she was satisfied with such securities and investments and approved the same and waived their production in court. A like certificate was filed with each subsequent report during the lifetime of Mrs. Preston. After her death, Ord Preston, as guardian of Mary

Ord Preston and Eleanor Converse Preston, minors, gave a like certificate to the report for the year ending February 15, 1912. When the usual form of certificate was sent to him by the trustee for the report ending February 15, 1913, he declined to sign it in that form, and simply certified that he was "satisfied as such guardian as to the existence of said securities and that they are held by said Trustee, and as such guardian I waive any right to have such securities produced in court for examination and approval by the Court." On being requested to sign the certificate in the former form, which was again sent to him by the trustee, he declined to do so. To the report ending March 2, 1914, he certified as last above, and wrote below the certificate the following: "Mch. 10, 1914, I protest against the £2,000 U. S. Mexico 4% bonds because they are not within the provisions of the will of Clarance W. Hicks, deceased." (Signed) "Ord Preston, Guardian."

It is claimed that even if the investment in those bonds was unauthorized by the will, the approval of Mrs. Preston, and Ord Preston, as guardian, ratified the investment and relieved the trustee from liability. It is clear that consent to, or approval by Mrs. Preston of an unauthorized investment could in no manner affect the rights of those entitled to the remainder of the estate. She was but a life tenant without power of appointment, or other disposition of the remainder. (Contee v. Dawson, 2 Bland's Chancery, 264; Zimmerman et al. v. Farley et al., 70 Md. 561, 17 Atl. 560; Adair et al. v. Brimmer et al., 74 N. Y. 539; Ferguson v. Epes, 77 Va. 499.)

We come then to the approval by Ord Preston, guardian, of the report for the year ending February 15, 1912, that being the only report in which the investments reported were approved by him. We have searched the record in vain for evidence that Ord Preston at the time he signed that certificate knew of the limitations contained in the will with respect to investments by the trustee, or that he was aware of the fact that the investment in those bonds was in viola-

tion of the trust. If it be assumed that these minors have such a vested interest in the remainder of the estate, after the death of Mrs. Andrews, as would authorize a ratification of an unauthorized investment, such ratification must have been with full knowledge of the facts. "To establish a ratification by a *cestui que trust,* the fact must not only be clearly proved, but it must be shown that the ratification was made with a full knowledge of all the material particulars and circumstances, and also in a case like the present that the *cestui que trust* was fully apprised of the effect of the acts ratified, and of his or her legal rights in the matter. Confirmation and ratification imply to the legal mind, knowledge of a defect in the act to be confirmed, and the right to reject or ratify it. The *cestui que trust* must therefore not only have been acquainted with the facts, but apprised of the law how these facts would be dealt with by a court of equity. All that is implied in the act of ratification, when set up in equity by a trustee against his *cestui que trust,* must be proved, and will not be assumed. The maxim '*ignorantia legis excusat neminem,*' cannot be invoked in such case. The *cestui que trust* must be shown to have been apprised of his legal rights. (Cumberland Coal Co. v. Sherman, 20 Md. R. 151; S. C., 30 Barb., N. Y. 575; Lammott v. Bowley, 6 H. & J., Md., 526.)" (Adair et al v. Brimmer, 74 N. Y. 539. 1 Perry on Trusts and Trustees (6th Ed.) Sec. 467; 2 (id.) Sec. 851.) The breach of trust had occurred and the unauthorized investment had been made long before Ord Preston became guardian. His approval which it is claimed released the trustee from liability for a breach of the trust was without consideration, and without authority from the court. Certainly no court having its attention called to the terms of the will would have either authorized or approved an investment of the trust funds in securities of a foreign country. By the provision of the will the principal of the trust funds was to be invested and kept invested in certain specifically named securities (with the single exception that investments made by the testatrix might be con-

tinued) until the death of the annuitants, and then to be conveyed to the persons entitled to the same. Had it been shown that Ord Preston at the time he signed the approval of the report for the year ending February 15, 1912, knew that this investment was in violation of the terms of the will, his approval would not have released the trustee from liability for a breach of trust already committed. Nor was it within the power of the court to change the terms of the trust in the circumstances of this case. (Morris v. Boyd, 110 Ark. 468, 162 S. W. 69, 1916A. Ann. Cas. 1004.) At the time the trustee solicited and procured the certificate of approval it knew that such approval was in violation of the trust. The approval of the investment by the guardian in violation of the trust was not binding upon the minors. In New Jersey, where Ord Preston was appointed guardian, a guardian released a part of the property upon which a legacy was made a lien by will, from the lien of the legacy. It was held that the transaction was a violation of the guardian's trust and could not be sustained, and that the lien of the legacy was not discharged by the release. (Blauvelt v. Van Winkle, 29 N. J. Eq. 111. See also, Water Valley Mfg. Co. v. Seaman, 53 Miss. 653; Freiberg v. De Lamar, 7 Tex. Civ. App. 263, 27 S. W. 151; Brown et al. v. Fidelity & Deposit Co., 76 S. W. 944; Smith v. Dibrell, 31 Tex. 239, 98 Am. Dec. 526; Aydelott v. Breeding, 111 Ky. 847, 64 S. W. 916; Woerner on Guardianship, p. 173.) We are of the opinion that the approval by the guardian of the investment in Mexican bonds did not release the trustee from liability for that unauthorized investment.

It is further contended that the approval by the court of the annual reports of the trustee is final and *res adjudicata*. A number of cases from California are cited as supporting that view; but they are not applicable here for the reason that the California statute is different from ours. This question was before this court in Nagle v. Robbins, 9 Wyo. 211, 62 Pac. 154, 62 Pac. 796, where a guardian had made investments without an order of court, but which were sub-

sequently approved by the court.   It was there said: "The
cases cited by counsel for defendant in error, upon this ques-
tion did not involve the effect of an intermediate approval
and its conclusiveness upon final settlement.   In those cases
it was very properly held that as the court could have di-
rected the expenditure, it might ratify it, if deemed bene-
ficial to the estate; and that it might be so approved upon
final settlement, thus curing the objection of want of power
in the guardian to do the act complained of.   (Frankenfield's
Appeal, 102 Pa. St., 589; Cheny v. Roodhouse, 135 Ill. 257,
25 N. E. 1019.)  The guardian, having had authority to make
the investment without an order previously obtained, per-
mitting it, the subsequent intermediate approval thereof
stands upon the same footing as approvals of current ac-
counts, or annual settlements of accounts, pending the con-
tinuance of a guardianship.   It is generally held that such ap-
provals and settlements while *prima facie* evidence of cor-
rectness, are not conclusive upon the ward."  In the present
case the court could not have lawfully authorized the in-
vestment in Mexican bonds because such investment was un-
authorized by the will.   In the *Nagle* case a loan made by the
guardian, and which was shown in a number of intermedi-
ate reports which were approved by the court, was sur-
charged to the guardian.   In view of that decision, with
which the court as at present constituted fully concurs, the
citation of other authorities would seem unnecessary; but
we cite the following from among many: Picot v. Biddle's
Adm'r., 35 Mo. 29, 86 Am. Dec. 134; Seawell v. Greenway,
22 Tex. 691, 75 Am. Dec. 794; Bachelor v. Schmela, 49
Neb. 37, 68 N. W. 378; Fraim Ex'r. v. Millison, 59 Ind 123:
Bliss v. Seaman, 165 Ill. 422, 46 N. E. 279.

In the reply brief filed, and in oral argument, counsel
bring forward the contention that the proper parties were
not before the court to authorize the order made; that there
was no appearance for the minors other than by Ord Pres-
ton as guardian, and that the surviving annuitant, Mrs. An-
drews, is not complaining.  But this is not a civil action, but

a proceeding in a trust estate over which the court had jurisdiction, and the trustee was before the court. It was the duty of the court when it learned in any manner that the trustee was violating the terms of the trust to call it to account and to make such order in the premises as justice and equity required, and to see that the trust was faithfully executed.

At the time these Mexican bonds were purchased the trustee knew that it was a violation of the provisions of the will. About a year thereafter Mrs. Preston called the attention of the trustee to that fact; but it continued to hold them and has continued to do so to the present time. There is nothing in the record to indicate that at any time when the annual reports were presented to the court was its attention called to the terms of the will, until the filing of the protest by Ord Preston, guardian. No notice of the filing of these reports, or of the time and place when and where they would be heard and considered by the court was given to the parties interested, and they were not bound by the court's approval of the annual reports under such conditions. The investment in the Mexican bonds was a breach of trust for which the trustee must be held liable; and the district court did not err in surcharging the amount of trust funds so invested to the trustee.

The judgment of the district court is affirmed.

*Affirmed.*

POTTER, C. J., concurs.

SCOTT, J., did not participate in this opinion.