2009 WY 23

**Gerald SCHMIDT and Claudia Melcher, Appellants (Plaintiffs),**

v.

**Karl KILLMER, Trustee in Liquidation of Triple B Limited Partnership 1998B; Macy & Associates, LLC, f/k/a Macy & McKee, LLC, a Wyoming Limited Liability Company; Triple B Limited Partnership 1998B, a Wyoming Limited Partnership; Brammer Petroleum, Inc.; a Texas Corporation doing business in Wyoming; Carpenter & Sons, Inc., a Wyoming Corporation; BTS LLC, a Wyoming Limited Liability Company; Sil-**

ver Petroleum Corporation, an Oklahoma Corporation doing business in Wyoming; Sun Cementing of Wyoming, Inc., a Wyoming Corporation; Kenneth D. Wagner (XS Energy, Inc.); William R. Barth, Jr., Appellees (Defendants).

No. 06–38.

Supreme Court of Wyoming.

Feb. 23, 2009.

Representing Appellants: Stuart S. Healy of Healy Law Firm, Sheridan, Wyoming.

Representing Appellees: Stephenson D. Emery of Williams, Porter, Day & Neville, P.C., Casper, Wyoming; Morris R. Massey of Brown, Drew & Massey, LLP, Casper, Wyoming. Argument by Messrs. Emery and Massey.

Before VOIGT, C.J.*, and GOLDEN, HILL, KITE, and BURKE, JJ.

* This case was reassigned to Chief Justice Voigt on December 1, 2008.

VOIGT, Chief Justice.

[¶ 1]  The appellants, Gerald Schmidt and Hank Melcher, were general partners in Triple B Limited Partnership 1998B (Triple B).[1] The Triple B partners voted to dissolve and liquidate the partnership, and appointed appellee Karl Killmer to act as liquidating trustee to wind up the partnership's affairs. Following liquidation of the partnership and distribution of its assets, the appellants filed suit against Killmer, Macy & Associates, LLC (Killmer's accounting firm), and the remaining Triple B Partners (appellees). The appellees moved for and were eventually awarded summary judgment resulting in a dismissal of the suit.  The appellants now appeal that ruling.  We will affirm.

## ISSUE

[¶ 2]  The district court's primary rationale for granting summary judgment in favor of the appellees was a finding that the appellants had expressly consented to the liquidation and distribution plan.  The appellants contend on appeal that genuine issues of material fact exist as to whether they had sufficient knowledge of the differences between the Partnership Agreement and the settlement plan to consent to the latter.

## FACTS

[¶ 3]  Triple B was formed in October of 1998.  The purpose of Triple B was to "own, manage and develop oil and gas leases and interests therein, and to explore for, produce and sell hydrocarbons...." Under the Partnership Agreement, the equity and ownership of the partnership was to be divided 25% to General Partners and 75% to Limited Partners.  Triple B Energy, Inc. and its president, Joe Banks, held a 24.9% general partnership interest, with Vernon E. Neils holding the remaining 0.1% general partnership interest.  On July 20, 1999, Mr. Banks transferred 15.225% of the partnership interest to other parties, including 5% to each of the appellants.  A few days later, on July 28, 1999, Mr. Banks relinquished his remaining 9.675% interest to the Triple B partners,

divided proportionately according to each partner's existing interest.  Through this division, the appellants each acquired an additional .5417% interest, leaving each with a 5.5417% partnership interest.

[¶ 4]  Differences arose among the Triple B partners as to the management and direction of the partnership, and in October of 2000, the decision was made to liquidate and wind up the affairs of the partnership.  The partners voted unanimously to hire Killmer as liquidating trustee.  On July 9, 2001, Killmer, through counsel, sent a letter to the partners detailing the plan for final liquidation and distribution of partnership assets. Enclosed with the letter was a ballot for each partner to indicate agreement to proceed with the liquidation as set forth in the letter. On July 13, 2001, appellant Schmidt returned the ballot expressly indicating his approval of the proposed distribution plan.  Eventually, partners owning approximately 62% of the profit/loss interests in the partnership voted in favor of the proposed method of liquidation. Killmer therefore informed the partners that he would proceed with the liquidation as proposed.

[¶ 5]  Appellant Melcher was involved in a pending collateral lawsuit against Triple B. On March 5, 2002, Melcher agreed to settle the lawsuit and entered into a settlement agreement with Killmer, who was acting as trustee for Triple B. Melcher's interest in the liquidation and distribution of Triple B was addressed as a term of the settlement.  Specifically, the settlement agreement read, in pertinent part: "All distributions in liquidation of [Triple B] ... shall be made to Melcher in the proportion reflected on the attached Exhibit A at the same time or times as distributions to other partners."  Exhibit A to the settlement agreement was a "Capital Account Analysis"—a spreadsheet illustrating all of the distributions as described by Killmer in the original proposal for liquidation and distribution of assets.

[¶ 6]  In November of 2002, Killmer, through his attorney, sent a letter to the partners indicating that with the exception of a few final tasks, the liquidation and dissolu-

---

1. Hank Melcher died during the pendency of this action and Claudia Melcher, personal representa-

tive of his estate, was substituted as a party in his place.

tion of Triple B was complete. In the letter, Killmer also noted that appellant Schmidt was claiming that the partnership assets had been improperly distributed. Schmidt brought his concerns to the attention of appellant Melcher, and when Melcher's attorney elected not to pursue the matter, Melcher contacted Schmidt's attorney and on July 8, 2003, Schmidt and Melcher filed a civil action against Killmer, his accounting firm, Triple B, and the individual partners.

[¶ 7] On August 18, 2003, Killmer and his accounting firm filed a motion for summary judgment arguing, *inter alia*, that the appellants were not entitled to any relief inasmuch as they had consented to and ratified Killmer's actions. The district court heard argument on the motion and on September 9, 2004, issued a decision letter denying the motion. The court addressed Killmer's arguments as follows:

> As to the ratification and consent argument, the court is unable to find with the material submitted whether the distribution was made according to the representation. The representation was: "The assets will be distributed to partners holding positive capital accounts until all such accounts equal zero, and thereafter to partners at their profit and loss percentages." Exhibit 8 to Killmer Affidavit, page 4. Once all of the bills are paid and the capital accounts are reduced to zero, profits were to be divided 25% to the general partners and 75% to the limited partners. As I said above, I am unable to tell if that distribution has been made. Finally, with regard to plaintiff Melcher, Exhibit A to his settlement agreement is not self-explanatory such that he received the appropriate distribution.

[¶ 8] A year later, after further discovery, Killmer filed a renewed motion for summary judgment. In his brief in support of the motion, Killmer argued that further discovery had "fill[ed] in the holes" in the initial record by confirming that the appellants had consented to the terms of the settlement and received everything that Killmer told them they would get. A second hearing was held and on December 22, 2005, the district court issued a decision letter indicating that it would grant Killmer's renewed summary judgment motion. Specifically, the court stated:

> With this motion, Defendant seeks summary judgment dismissing Plaintiff's claims against them. Defendants have seized upon language in the court's decision letter of September 9, 2004, which stated that "the court is unable to find with the material submitted whether the distribution was made according to the representation." Indeed, Defendants have provided more than enough evidence to the court, and Plaintiffs by *stipulation in court and agreement* have not contested, that the Plaintiffs did receive the distributions Mr. Killmer told them that they would get upon dissolution of the 1998B partnership. Plaintiffs continue to assert that the proposal was not in accordance with the Partnership Agreement. Based upon the admissions, the court finds that there was a ratification and consent to any resulting deviations from the Partnership Agreement.

(Emphasis in original.) The district court entered an order dismissing the case on January 12, 2006. The appellants timely filed a Joint Notice of Appeal.

## STANDARD OF REVIEW

[¶ 9] When we review the granting of a summary judgment, we employ the same standards and use the same materials as were employed and used by the trial court. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. Summary judgment is appropriate only when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We review a grant of summary judgment deciding a question of law de novo and afford no deference to the trial court's ruling.

"We will affirm a grant of summary judgment if it can be sustained on any legal ground appearing in the record."

(Citations omitted.) *Platt v. Creighton*, 2007 WY 18, ¶7, 150 P.3d 1194, 1198–99 (Wyo. 2007).

## DISCUSSION

■ [¶ 10] The appellants argue on appeal that Killmer's actions as liquidating trustee violated contractual and fiduciary duties. Killmer responds that even if he somehow acted improperly, which he disputes, the appellants consented to his actions and ultimately received everything to which they agreed. The appellants argue that genuine issues of material fact exist with regard to whether they consented to Killmer's actions in liquidating Triple B Partnership. Because the question of appellants' consent is dispositive, our discussion will begin there.

■ [¶ 11] "Principles of trust law recognize that '[a]fter a breach of trust has occurred, a beneficiary may expressly or impliedly express satisfaction with the trustee's action and thereby prevent himself from claiming thereafter that it was illegal.'" *In re Spengler*, 228 Wis.2d 250, 596 N.W.2d 818, 824 (Ct.App.1999) (quoting George Gleason Bogert et al., *The Law of Trusts and Trustees* § 962 (rev.2d ed 1983)). "[A] trust beneficiary who consents to or approves of an act, omission, or transaction by a trustee may, upon ground of waiver or estoppel, be precluded from subsequently objecting to the impropriety of the act, omission, or transaction." 76 Am.Jur.2d *Trusts* § 338 (2005) (citing *Mahle v. First Nat'l Bank*, 241 Ill.App.3d 672, 182 Ill.Dec. 691, 610 N.E.2d 115, 117 (1993)). This Court has said:

> To establish a ratification by a *cestui que trust*, the fact must not only be clearly proved, but it must be shown that the ratification was made with full knowledge of all the material particulars and circumstances, and also in a case like the present that the *cestui que trust* was fully apprised of the effect of the acts ratified, and of his or her legal rights in the matter.

*Int'l Trust Co. v. Preston*, 24 Wyo. 163, 156 P. 1128, 1131 (1916). A beneficiary's consent or ratification is not valid, however, if the beneficiary is able to prove such was induced by fraud in the execution, fraud in the inducement, mutual mistake, or mental incompetence. 76 Am.Jur.2d *Trusts* § 338 (2005) (citing *McCormick v. McCormick*, 118 Ill. App.3d 455, 74 Ill.Dec. 73, 455 N.E.2d 103, 112 (1983)).[2] In sum, consent or ratification by a trust beneficiary requires proof of: 1) express or implied consent to the trustees action, and 2) full knowledge of all the material particulars and circumstances.

[¶ 12] As to the first requirement, it is undisputed that both Schmidt and Melcher signed documents indicating consent to the distributions. On July 9, 2001, Killmer sent a letter to all partners specifically detailing his proposed final liquidation and distribution of all the partnership assets. Attached to that letter was a ballot wherein each partner could indicate whether he agreed with or objected to the proposed plan. Appellant Schmidt returned the signed ballot with a check in the box indicating that he agreed with the proposed distribution.

[¶ 13] Although Appellant Melcher initially disagreed with the proposed distribution, he later consented to the plan as part of the separate lawsuit settlement. As a term of the latter settlement agreement, Melcher agreed to accept distributions in liquidation of Triple B in the proportion set forth in the liquidation and distribution plan presented by Killmer in the July 9, 2001 letter. The settlement agreement included an exhibit de-

---

2. Although not binding in this matter, as it was not effective until July 1, 2003, Wyoming's recently-codified consent, release, and ratification statute is consistent with these principles:

> (a)A fiduciary is not liable to a beneficiary for breach of trust if the beneficiary consented in writing to the conduct constituting the breach, released the fiduciary from liability for the breach or ratified the transaction constituting the breach, unless:

> (i)The consent, release or ratification of the beneficiary was induced by improper conduct of the fiduciary; or
> (ii)At the time of the consent, release or ratification, the beneficiary did not know of the beneficiary's rights or of the material facts relating to the breach.

Wyo. Stat. Ann. 4–10–1009(a) (LexisNexis 2007).

tailing the individual percentage distributions assigned to each Triple B partner.

[¶ 14] The appellants do not dispute that they received and signed these documents.[3] Rather, their argument rests primarily on the second requirement of the consent/ratification analysis. They assert that their consent was not valid inasmuch as they did not have full knowledge of the specifics of their consent, or that the extent of their knowledge is a disputed question of fact. In response, Killmer insists that the appellants had full knowledge of the facts by virtue of the series of letters sent to them explaining his actions in detail at every step of the liquidation process.

[¶ 15] We find Killmer's position to be supported by the record. We specifically look to Killmer's July 9, 2001, letter. In that correspondence, Killmer set forth the exact percentages all partners, including the appellants, were to receive on liquidation. He explained, in detail, how he had reached his conclusions, referencing the specific provisions of the Partnership Agreement upon which he was relying. This information was readily available to both Schmidt and Melcher at the time they signed the documents indicating their consent to Killmer's proposed distribution plan.

[¶ 16] With respect to an individual's knowledge of facts, the Wyoming Uniform Trust Code indicates:

(a) Subject to subsection (b) of this section, a person has knowledge of a fact if the person:

(i) Has actual knowledge of it;

(ii) Has received a notice or notification of it; or

(iii) From all the facts and circumstances known to the person at the time in question, has reason to know it.

Wyo. Stat. Ann. § 4–10–104(a) (LexisNexis 2003). Further, we have said:

One who signs a contract generally cannot avoid it on the ground that he did not attend to its terms, or did not read it, or supposed that it was different in its terms, or that he took someone's word as to what it contained.

"The rule is that one who signs a paper, without reading it, if he is able to read and understand, is guilty of such negligence in failing to inform himself of its nature that he cannot be relieved from the obligation contained in the paper thus signed, unless there was something more than mere reliance upon the statements of another as to its contents. * * * *"

(Citations omitted.) *Laird v. Laird,* 597 P.2d 463, 467 (Wyo.1979); *accord First State Bank of Wheatland v. American Nat'l Bank,* 808 P.2d 804, 806 (Wyo.1991).

[¶ 17] The appellants do not attempt to nullify their consents by arguing that they were fraudulently obtained, or based on mistake, or that Killmer engaged in any type of self-dealing. Instead, their contention is that Killmer's plan of liquidation and distribution deviated from the terms of the Partnership Agreement, and that they were not fully aware of such deviations. Because we find that the appellants consented to Killmer's actions when they signed documents accepting the distribution plan, and they were fully apprised at the time of all the details thereof, the appellants cannot now challenge the distribution plan on the ground that it differed from the Partnership Agreement. They had an opportunity to make that challenge before they agreed to the settlement, and they did not do so.

**CONCLUSION**

[¶ 18] Having considered all of the admissible evidence and argument submitted by

---

3. An affidavit submitted by Schmidt states the following regarding the ballot:

I did receive a copy of the letter of July 9, 2001, referred to in paragraph 19 of the Killmer Affidavit and attached as Exhibit 8 within a few days after it was mailed, and I did sign and return the Ballot referred to in paragraph 21 and shown as Exhibit 11 to the Affidavit, probably on the same day it was received.

Melcher's affidavit includes a similar statement concerning the settlement agreement, stating, "As represented in paragraph 23 of the Affidavit of Karl Killmer supporting his Motion for Summary Judgment, on March 5, 2002, I did sign the Settlement Attached (sic) as Exhibit 13 to the Killmer Affidavit."

the parties in the summary judgment proceedings, we find no disputed questions of material fact as to the appellants' consent to Killmer's actions, and conclude, as a matter of law, that the appellees were entitled to judgment. Affirmed.