# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 6

OCTOBER TERM, A.D. 2013

_____January 15, 2014_____

ALAN G. MOATS and CHLEO I.
MOATS,

Appellants
(Plaintiffs),

v.

PROFESSIONAL ASSISTANCE, LLC,
d/b/a SUMMIT TITLE SERVICES,
KUZMA SUCCESS REALTY, and P.
OLEN SNIDER, JR.,

Appellees
(Defendants).

S-13-0045

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellants:*
    J. Kent Rutledge and Shawnna M. Herron[*] of Lathrop & Rutledge, P.C., Cheyenne, Wyoming. Argument by Mr. Rutledge.

*Representing Appellees Professional Assistance, LLC, d/b/a Summit Title Services and P. Olen Snider, Jr.:*
    Kate M. Fox[†] and Amanda F. Esch of Davis & Cannon, LLP, Cheyenne, Wyoming. Argument by Ms. Esch.

*Representing Appellee Kuzma Success Realty:*
    Lindsay A. Woznick and Khale J. Lenhart of Hirst Applegate, LLP, Cheyenne, Wyoming. Argument by Mr. Lenhart.

*Before KITE, C.J., and HILL, VOIGT,[‡] BURKE, and DAVIS, JJ.*

---

[*] Order Allowing Withdrawal of Counsel Shawnna M. Herron filed on July 10, 2013
[†] Order Allowing Withdrawal of Kate M. Fox filed December 13, 2013
[‡] Justice Voigt retired effective January 3, 2014

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]   Appellants Alan and Chleo Moats (Moats) sold 850 acres of farm ground, intending to retain the mineral rights for themselves.  The deeds prepared by Appellee Professional Assistance, L.L.C., d/b/a Summit Title Services did not reserve the minerals, even after the Moats were made aware of the omission at closing, insisted that it be rectified, and were assured by a Summit employee that the deeds had in fact been corrected.  Approximately six years passed before the error was discovered, and the Moats sued Summit, its general counsel Appellee P. Olen Snider, Jr., and Kuzma Success Realty, the brokerage firm involved in the transaction.

[¶2]   The district court granted summary judgment in favor of all Appellees, finding that the Moats failed to exercise due diligence to discover the error so as to extend the statute of limitation as a matter of law.  We find that there are genuine issues of material fact as to the claims against Summit and Snider, and we therefore reverse and remand for further proceedings as to those claims.  We find that the district court correctly granted summary judgment to Kuzma, and we affirm that decision.

## ISSUE

[¶3]   Are there genuine issues of material fact as to whether the Moats exercised reasonable diligence to discover their claims against Appellees under Wyo. Stat. Ann. § 1-3-107(a)(i)(B), and if not, were Appellees entitled to judgment as a matter of law under Wyoming Rule of Civil Procedure 56?

## FACTS

[¶4]   The Moats own farmland in northern Laramie County.  In early 2004, they decided to sell 850 acres, but wanted to retain the mineral rights.  They contacted George O'Hare (O'Hare), a broker associate with Appellee Kuzma Success Realty, and entered into a listing agreement on January 5, 2004.

[¶5]   The listing agreement indicated that no mineral rights were to be included in the purchase.  After the property was listed, Howard Romsa, who had some interest in purchasing the land, contacted Mr. Moats directly.  The Moats set a price satisfactory to the Romsas and notified O'Hare that they would contact him.  The record contains an undated amendment to the agency agreement in which the Moats consented that O'Hare act as an intermediary rather than as the Moats' agent, and which explained the change in the relationship.  The Moats then received a written offer to purchase from the Michael Romsa and Heidi Romsa Revocable Trusts on May 17, 2004.  They received a separate purchase offer for a different parcel from the Howard and Mary Romsa Revocable Trusts on May 19, 2004.  The offers were prepared by O'Hare, and they each indicated that

1

"[t]here are no mineral rights included." The Moats accepted both offers in writing on May 19, 2004.

[¶6] Appellee Professional Assistance, LLC, doing business as Summit Title Services (Summit), was selected to serve as the closing agent for the transaction. Appellee P. Olen Snider, Jr. (Snider) is an attorney who serves as general counsel for Summit. The Moats and the Romsa trustees signed a set of general closing instructions which indicated that "[t]he parties will provide to the Closer all documents necessary for the closing and in form and content sufficient to satisfy the title insurance commitment requirements." In fact, Summit prepared the documents necessary for the closing, including the deeds necessary to transfer title. Mr. O'Hare testified that his office customarily sends a copy of the executed purchase offer and acceptance to Summit for its use in preparing the required paperwork.

[¶7] Closing took place at Summit's offices in Cheyenne on May 19, 2004.[1] Summit employee Dawn West closed the transaction. Present for the closing were O'Hare, the Moats, four members of the Romsa family representing the two trusts, and West.

[¶8] Mr. Moats testified that he did not finish high school, and that his ability to read and understand complex documents is limited. Mrs. Moats also dropped out of high school but obtained a diploma through a correspondence course. She had a long career with AT&T, working as a manager in the sales department and later as a call quality analyst. She supervised up to twenty people while with AT&T. Mr. Moats customarily relies upon her to help him understand complex documents.

[¶9] At the closing, Ms. West presented the documents Summit had prepared to the parties to the transaction, explaining them as she went. The Moats did not read any of the documents presented. When Ms. West presented the warranty deeds necessary to transfer the property being sold, she explained that the deed did not reserve the mineral rights from the sale. Mr. Moats said "absolutely not," and told the Romsas and West that he and his wife would not sell unless they kept the minerals as agreed.

[¶10] West picked up some documents, said she would fix them, and left the room. She did not return for up to twenty minutes according to Mrs. Moats. When she did return, she said "they're okay now" or words to that effect, and the Moats signed the deeds without reading them. Mr. Moats explained that "when somebody says they did something and puts it back down in front of you and says it's all right now, I guess I'm dumb enough, I just take them at their word." O'Hare was not asked to and did not review the deeds, and the Moats did not ask him any questions about them.

---

[1] The offers were evidently accepted at or near the time of the closing.

2

[¶11] The deeds are each one page of single-spaced text, and they do not reserve the mineral rights.[2] Mineral rights not expressly reserved in the deed to a surface estate are transferred with the surface estate. *See, e.g.,* 1 Patrick H. Martin & Bruce M. Kramer, *Williams and Meyers Oil & Gas Law* § 202 (2012); *Whitney Holding Corp. v. Terry,*

---

[2] The deeds are identical except for the property description and the names of the Grantees.

WARRANTY DEED

Alan G. Moats and Chleo I. Moats, husband and wife (the "Grantor"), residing in Laramie County, Wyoming, for and in consideration of the sum of Ten Dollars ($10) in hand paid and other good and valuable consideration, does hereby CONVEY AND WARRANT a ONE-HALF (1/2) UNDIVIDED INTEREST, as tenants in common, to . . . , and his successor or successors in Trust; and CONVEY AND WARRANT a ONE-HALF (1/2) UNDIVIDED INTEREST, as tenants in common, to . . . , and her successor or successors in Trust, GRANTEES, in the following described real estate situate in Laramie County, Wyoming, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of the State of Wyoming, to-wit:

[property description]

TOGETHER WITH all right, privileges, appurtenances, and hereditaments thereto appertaining.

SUBJECT TO all reservations, easements, covenants, conditions, and restrictions of record.

TO HAVE AND TO HOLD the herein-described property unto the Grantee, and the Grantee's respective successor or successors in Trust, as tenants in common, in fee simple, forever.

AND the Grantor, for the Grantor and for the Grantor's heirs and personal representatives, covenants that at the time of the making and delivery of this Warranty Deed the Grantor was lawfully seized of an indefeasible estate in fee simple in and to the premises herein described and had good right and power to convey the same; that the same were then free from all encumbrances; and that the Grantor warrants to the Grantee, and the Grantee's heirs and assigns, the quiet and peaceful possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same.

AS WITNESS our hands on this 19th day of May, 2004.

/s/ Alan G. Moats_____          /s/ Chleo I. Moats_____
Alan G. Moats                       Chleo I. Moats

[Acknowledgement by Notary Public]

3

2012 WY 21, 270 P.3d 662 (Wyo. 2012); *Gilstrap v. June Eisele Trust*, 2005 WY 21, ¶ 15, 106 P.3d 858, 863 (Wyo. 2005). The Moats were provided with copies of all the documents, but they did not review them after leaving the closing. The record contains no explanation for the twenty-minute hiatus in the closing, or why the deeds with which West returned did not reserve the minerals.

[¶12] Mr. Snider, counsel for Summit, testified that deeds can contain anything the parties want so long as the provisions do not affect insurability of title transferred, and that Summit was "simply the scrivener." He also testified that he had never prepared a mineral reservation up to that point in time, and that it would have taken him hours to research how to properly draft one. The company would normally have told the parties to have their own attorneys prepare a deed containing a mineral reservation. West did not tell the Moats that their own attorney needed to prepare the deeds to reserve the minerals, but instead assured them that the deed did not convey the minerals after purportedly making corrections.

[¶13] About six years passed before the Moats learned of the problem with the deed. A landman with Family Tree Corporation offered to pay $30.00 an acre in bonus for a paid-up oil and gas lease on the property that had been transferred. The Moats were willing to lease the minerals for that price, and they executed the required documents. When a bonus check was not forthcoming, they followed up with the landman and learned that they did not own the minerals because they had been transferred.

[¶14] Mr. Moats contacted O'Hare, and he and the Moats went to the Laramie County courthouse to check the deeds. After reviewing the deeds, O'Hare told the Moats that the minerals had in fact been transferred with the land. He later told Mr. Moats that he had spoken with representatives of Summit Title, who told him that there had been a mistake and that they thought they could get the minerals back. Moats later met with a representative from Summit Title who had him sign some papers that were intended to play a role in transferring the minerals back to him and his wife, but he was later told that the representatives of the Romsa trusts would not sign the required papers. In the meantime, the land had been subdivided, apparently without reservation of the minerals, meaning that purchasers without knowledge of the underlying transaction (potentially bona fide purchasers) owned them. The intervening interests in the land would have made reformation of the deeds difficult if not impossible.

[¶15] The Moats filed suit against Appellees on September 28, 2011. They claimed negligence against all defendants, and breach of contract and breach of an implied covenant of good faith and fair dealing against Kuzma and Summit. They also claimed legal malpractice against Snider and Summit, and negligent misrepresentation against Summit.

[¶16] The district court granted summary judgment in favor of all Appellees on all claims. It found that there were no genuine issues of material fact as a matter of law, and that the two-year professional negligence statute, Wyo. Stat. Ann. § 1-3-107, barred the Moats' claims because they had not read the documents in question, thereby failing to exercise the diligence necessary to avail themselves of more time under the discovery rule. This timely appeal followed.

## STANDARD OF REVIEW

[¶17] Our standard for review of summary judgment has been stated so often that it requires no elaboration:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. [*Snyder v. Lovercheck,* 992 P.2d 1079, 1083 (Wyo. 1999)]; *40 North Corp. v. Morrell,* 964 P.2d 423, 426 (Wyo. 1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id.* If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. *Roberts v. Klinkosh,* 986 P.2d 153, 155 (Wyo. 1999); *Downen v. Sinclair Oil Corp.,* 887 P.2d 515, 519 (Wyo. 1994). We review a grant of summary judgment deciding a question of law de novo and afford no deference to the district court's ruling. *Roberts v. Klinkosh,* 986 P.2d at 156; *Blagrove v. JB Mechanical, Inc.,* 934 P.2d 1273, 1275 (Wyo. 1997).

> *Lindsey v. Harriet,* 2011 WY 80, ¶ 18, 255 P.3d 873, 880 (Wyo. 2011). We can affirm an order granting summary judgment on any basis appearing in the record. *Magin v. Solitude Homeowner's Inc.,* 2011 WY 102, ¶ 20, 255 P.3d 920, 927 (Wyo. 2011) (citing *Walker v. Karpan,* 726 P.2d 82, 89 (Wyo. 1986)).

*DiFelici v. City of Lander*, 2013 WY 141, ¶ 7, 312 P.3d 816, 819 (Wyo. 2013).

## DISCUSSION

**Claims Against Summit and P. Olen Snider, Jr.**

[¶18] The Moats argue that the trial court erred in granting summary judgment to all Appellees because there was a genuine issue of material fact as to whether they exercised due diligence under the specific circumstances of this case. Appellees respond that the undisputed facts show that the deeds are relatively simple, and that the Moats had an opportunity to review them at closing and for years afterward, but did not do so. They also argue that Mr. Moats' limited reading abilities are, as a matter of law, insufficient to excuse both Mr. and Mrs. Moats from reading the deeds.

[¶19] The pertinent section of § 1-3-107 provides as follows:

> (a) A cause of action arising from an act, error or omission in the rendering of licensed or certified professional or health care services shall be brought within the greater of the following times:
>
> (i) Within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission, if the claimant can establish that the alleged act, error or omission was:
> (A) Not reasonably discoverable within a two (2) year period; or
> (B) The claimant failed to discover the alleged act, error or omission within the two (2) year period despite the exercise of due diligence.

Wyo. Stat. Ann. § 1-3-107 (LexisNexis 2013).

[¶20] The parties agree that this statute applies to the claims in this case. The Moats do not deny that the error in the deeds was discoverable within two years; instead, they argue that a jury should decide whether they exercised due diligence in light of Ms. West's assurances that the deeds had been changed to reserve the minerals.

[¶21] As we have previously said, the application of the discovery rule is a mixed question of fact and law:

6

The application of the discovery rule to a statute of limitations involves a mixed question of law and fact; consequently, the entry of summary judgment on the issue of when a statute of limitations commences to run is typically inappropriate. *See, e.g., Cathcart v. Meyer*, 2004 WY 49, ¶ 30, 88 P.3d 1050, 1062-63 (Wyo. 2004); *Murphy v. Housel & Housel,* 955 P.2d 880, 883 (Wyo. 1998). The question can only be resolved as a matter of law if uncontroverted facts establish when a reasonable person should have been placed on notice of his claim. *Hiltz v. Robert W. Horn, P.C.*, 910 P.2d 566, 569 (Wyo. 1996).

*Heimer v. Antelope Valley Improvement*, 2010 WY 29, ¶ 18, 226 P.3d 860, 864 (Wyo. 2010).

[¶22] We have never had occasion to define the term "due diligence" as it is used in § 1-3-107 (*see Adelizzi v. Stratton*, 2010 WY 148, ¶ 16, 243 P.3d 563, 567 (Wyo. 2010)), but we have found that term to be fact-specific in other contexts.

The question of due diligence is one of fact. *Sonat Exploration Co. v. Superior Oil Co*., 710 P.2d 221, 225-26 (Wyo. 1985); *LeBar v. Haynie*, 552 P.2d 1107, 1111 (Wyo. 1976).

*Daniel v. State*, 2008 WY 87, ¶ 14, 189 P.3d 859, 864 (Wyo. 2008) (dealing with whether the State exercised due diligence to learn of extent of victim's injuries in a criminal case).

The concept of "due diligence" is not foreign to this court. We have defined it as:

Such a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent [person] under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case.

*In Re Estate of Novakovich*, 2004 WY 158, ¶ 27, 101 P.3d 931, 938 (Wyo. 2004) (personal representative required to exercise reasonably diligent efforts, synonymous with due diligence, to locate creditors) (citing *Pittman v. State ex rel. Workers' Comp. Div.*, 917 P.2d 614, 618 (Wyo. 1996); *Olheiser v. State ex rel. Workers' Comp. Div.*, 866 P.2d 768, 773 (Wyo. 1994)).

The adoptive father's second issue is whether, if due diligence was required, the district court erred in finding that he had failed to exercise such diligence in attempting to locate the natural father. In *Colley v. Dyer*, 821 P.2d 565, 568 (Wyo. 1991), we defined due diligence as being

> that which is reasonable under the circumstances and not all possible diligence which may be conceived. Nor is it that diligence which stops just short of the place where if it were continued might reasonably be expected to uncover an address . . . of the person on whom service is sought. . . . Due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so.

*Matter of Adoption of CAM*, 861 P.2d 1102, 1105 (Wyo. 1993) (adoptive father required to exercise due diligence to locate natural father before serving by publication).

[¶23] Appellees correctly point out that those who sign documents without reading them do so at their peril. *Mendoza v. Gonzales*, 2009 WY 50, ¶ 10, 204 P.3d 995, 999 (Wyo. 2009) (beneficiaries who did not read disclaimer of interest in estate property bound by it); *Schmidt v. Killmer*, 2009 WY 23, ¶ 16, 201 P.3d 1121, 1126 (Wyo. 2009) (partners who did not read dissolution agreement bound by it); *Laird v. Laird*, 597 P.2d 463, 467 (Wyo. 1979) (husband who failed to read prenuptial agreement is bound by it). "One who signs a contract generally cannot avoid it on the ground that he did not attend to its terms, or did not read it, or supposed that it was different in its terms, or that he took someone's word as to what it contained." *Laird,* 597 P.2d at 467.

[¶24] They also correctly point out that we have refused to reform deeds when the grantor did not read a deed and then did not seek reformation for many years. *Town of Glenrock v. Abadie*, 71 Wyo. 414, 431-32, 259 P.2d 766, 771-72 (1953) (litigant who erroneously deeded minerals and did not make any effort to correct the mistake for over thirty years barred from claim of reformation).

[¶25] If this case involved only a failure to read an easily understood document in a claim for rescission or an effort to avoid a contract, Summit's argument would doubtless prevail. There are other facts to balance, however, and we must view them in the light most favorable to the Moats:

- Summit was a neutral third party hired to close the transaction. There would have been no reason for the Moats to distrust its employees.

- Summit was in the business of preparing title documents, including deeds. A reasonable person could assume that the company had employees competent to draft a deed reserving mineral rights.

- Mr. Moats unequivocally announced at the closing that he and his wife would not sell the property if they could not keep the minerals, and the buyers agreed.

- Ms. West picked up the two deeds and left the room for a substantial period of time. In this age of computers and fast printers, there could have been and probably was sufficient time to modify the two documents to include a mineral reservation.

- Mr. Snider testified that if Summit was not capable of preparing a deed, it would notify the grantor to have his or her attorney prepare the document. This was not done.

- Ms. West returned with the deeds and said they were "okay," an assurance that the correction had been made. Although the agreement between Summit and the Moats indicated that they could consult an attorney, Ms. West did not express any reservations about the documents or suggest that they speak with counsel after returning with the deeds.

- Although the deeds are only a page long, a reasonable juror might not find them to be as simple as Appellees claim. Mr. Snider testified that he, a licensed attorney acting as counsel for a title company, did not know how to draft a mineral reservation at the time the transaction took place.

- Nothing in the record before us suggests that the Moats or a reasonable person in their position should know that minerals are conveyed unless they are reserved. Without that knowledge they might not necessarily have known the effect of the deeds even if they had read them.

- Although the record on this point leaves a great deal to be desired, it indicates that the Romsa trusts failed to reserve the minerals when it transferred them to the purchasers of the property they subdivided, permitting an inference that the trustees also thought the deeds had been corrected.

- After the claimed error was discovered, Summit attempted to have the minerals transferred back from the Romsa trusts. A reasonable juror might, on the limited record we have, view this as an effort to correct an acknowledged mistake.

9

[¶26] As noted above, Appellees rely upon *Town of Glenrock v. Abadie* for the proposition that failure to read the deeds bars the Moats from availing themselves of the benefit of the discovery rule regardless of whether Summit representative West misled them. In *Abadie,* this Court relied upon *Kennedy v. Brown*, 113 S.W.2d 1018 (Tex. Civ. App. 1938), in which a Texas intermediate court of appeal reversed a trial court decision reforming a deed because the statute of limitations had run, and because, as in *Abadie*, the grantor had not read the deed to assure himself that his mineral rights had been reserved. The *Kennedy* court distinguished the earlier case of *Luginbyhl v. Thompson*, 11 S.W.2d 380, 382 (Tex. Civ. App. 1928), in which reformation had been granted and affirmed on appeal, explaining as follows:

> The effect of our holding in the case was that the purchaser of the land having permitted the grantor to collect the proceeds of the lease and, although having full knowledge that he was doing so, made no objection, his action in that regard lulled the grantor into a sense of security which, under the law, excused him from exercising any effort to ascertain the fact that his rights under the contract had been omitted from the deed. Nothing of that nature is shown by the record in this case. To hold with appellee in his contention would, in effect, nullify the provisions of the statute and eliminate even the liberal rule established by the courts which tolls its effect during the time a man of ordinary prudence would exercise diligence with respect to his rights, and extend the period of limitation to such time as the party affected by it actually received information concerning the subject matter, or the happening of some event which forced him to take cognizance of it.

*Kennedy*, 113 S.W.2d at 1021. The *Kennedy* court found no such circumstances in that case.

[¶27] In *Hutchins v. Birdsong*, 258 S.W.2d 218 (Tex. Civ. App. 1953), a different Texas intermediate court of appeal upheld reformation of a deed when the grantor was assured by the grantee that the documents in question, which the grantee's attorney prepared, did not transfer his mineral rights. *Id*. at 220-21. In ruling on what it described as a "vigorous motion for rehearing in which certain assertions are made by the writer, which, in his calmer moments he would not have indulged," it further explained its decision as follows:

> We have been requested by the appellants to discuss those two cases in relation to the facts of this case. Those cases hold that as a general rule a grantor is charged with

knowledge of the provisions in his deed; and that limitation begins to run against any action by him to correct a mistake in his deed from the date of the execution and delivery of the instrument. We recognize that as being a general rule, but both of these cases cited above reveal that they each recognize an exception to that rule. This exception is clearly set out in the *Kennedy* case (113 S.W.2d 1020), as follows: 'It is equally as well established by the authorities that in such cases limitation does not begin to run until the mistake is discovered or should have been discovered by the exercise of such diligence as would be exercised by a person of ordinary care and prudence.' Citing cases. Great stress in those cases is laid upon the fact that the grantor in each case had the deed prepared and delivered to the grantee. And in the Kennedy case it is stated further: 'It is neither alleged nor shown by the evidence that appellants did any act or thing which could be construed as an assurance to appellee (grantor) that the deed was written as contemplated by the contract (reserving the mineral interest) or that could have had the effect of lulling appellee into a sense of security in reference to the matter.' (Italics ours.) We think that the above holding is also the holding of the court in the *Kahanek* [*v. Kahanek*, 192 S.W.2d 174 (Tex. Civ. App. 1946)] case, which cites the Kennedy case as a basis for its holding. Thus it is clear that in the above cases had the facts shown that the grantees in the deeds involved in those cases had done any act or made statements which would have been sufficient to lull the grantor to sleep, then it seems to us that limitation under the exception set out above would not have begun to run against the grantor until they had discovered the mistake.

*Id.* at 221-22; *see also Zurick v. First Am. Title Ins. Co.*, 833 F.2d 233, 237 (10th Cir. 1987); 54 C.J.S. *Limitations of Actions* § 137 (2010 & Supp. 2013).

[¶28] This record presents a genuine issue of material fact as to whether the Moats exercised the diligence a reasonable person would have under the circumstances. They certainly should have read the deeds, but the record is far from clear that a reasonable person with no background in real estate law would necessarily have understood them to convey the mineral interests – as noted above, the law requires an express reservation to retain the minerals, and there is nothing in this record which would tell us that the Moats or a reasonable person similarly situated would have known that. Whether the Moats should have trusted the closing agent's representation that the deeds had been changed to reserve the minerals must be evaluated in light of all the facts. *See* 54 C.J.S., *supra,* §

11

245 (Professional Malpractice); and due diligence cases cited above. Viewed in the light most favorable to the Moats and that most unfavorable to Appellees, West took the deeds, found that they could not be drafted to include a reservation of mineral rights, and decided to complete the transaction without telling the Moats that they needed to have their attorney prepare a deed with a mineral reservation, because that would have required the closing to be rescheduled.[3] Summit's position is that West may have made a serious error or misrepresented what she had done with the deeds, but that the Moats should not have been fooled. That contention should be evaluated by a jury.

[¶29] Summit and Mr. Snider correctly point out that the Moats have not claimed fraud. That is not the question. The question is whether on the facts of this case, the Moats exercised due diligence after being told that the deeds has been corrected to eliminate the mineral reservation. The Moats need not prove fraud to support a finding that they exercised due diligence under the circumstances. *Womble v. Mahoney*, 383 P.2d 26, 29 (Okla. 1963); *United States for Use and Benefit of Humble Oil & Refining Co. v. Fidelity & Cas. Co. of New York*, 402 F.2d 893, 897-98 (4th Cir. 1968); *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 476-77 (Pa. 1964); 31 Samuel Williston, *Treatise on the Law of Contracts* § 79.54, at 488-89 (Richard A. Lord ed., 4th ed. 2004).

[¶30] Appellees Summit and Snider also cite *Schmidt v. Killmer*, 2009 WY 23, 201 P.3d 1121 (Wyo. 2009). That case involved a claim by general partners in a limited partnership against an accountant. The partners claimed that the accountant, who was the liquidating trustee, had not distributed the limited partnership's assets as required by the partnership agreement. This Court affirmed summary judgment because the partners had each signed a ballot approving the settlement agreement proposed by the trustee, although they contended that they did not understand it. We noted that the partners did not argue that their consent to the distribution was fraudulently obtained or based on mistake, or that the trustee engaged in self-dealing. *Id*. at ¶ 17, 201 P.3d at 1126. We also noted that the appellants were "fully apprised at the time of all the details." *Id.* The case therefore does not afford the support these Appellees claim it does, because it does not involve a document which might be difficult for a layman to understand, or a misrepresentation.

[¶31] The record reveals very little about Mr. Snider's involvement in the transaction. He may have had nothing to do with it. As we discuss below, a misrepresentation by one party will not necessarily extend the statute of limitations against another party. However, as we have held:

> A party moving for summary judgment carries the
> initial burden to "make a prima facie showing that no genuine

---

[3] Only four pages of Ms. West's deposition are in the record, and none of them pertains to the events of this case. The Court was advised at oral argument that Ms. West did not recall the transaction.

issue of material fact exists and that summary judgment should be granted as a matter of law." *Gayhart v. Goody,* 2004 WY 112, ¶ 11, 98 P.3d 164, 168 (Wyo. 2004) (quoting *Moore v. Lubnau,* 855 P.2d 1245, 1248 (Wyo. 1993)).

*Baker v. Speaks,* 2013 WY 24, ¶ 32, 295 P.3d 847, 855 (Wyo. 2013). Because the record does not tell us about Mr. Snider's involvement (or lack thereof), the required prima facie showing has not been made.

[¶32] A reasonable jury may find that the Moats exercised reasonable diligence in light of all of the circumstances, or it may find that they did not. We conclude only that when the record is viewed in the light most favorable to the Moats, there are genuine issues of material fact as to whether they exercised due diligence to discover potential claims against Summit and Mr. Snider in light of Ms. West's representations.

**Kuzma Success Realty**

[¶33] The record reflects that Kuzma associate broker George O'Hare drafted the purchase offer and acceptance in this case to exclude the minerals. It also reflects that he sent the purchase offer and acceptance to Summit, and that Summit drafted the deeds in question. He was not asked to and did not review the deeds before or after they were supposedly corrected. He is not accused of having misrepresented anything to the Moats.

[¶34] We therefore must decide whether there is a genuine issue of material fact as to whether the Moats used reasonable diligence to discover any claims it might have against Kuzma. As we have noted above, the Moats are not required to prove fraud to establish that they acted with due diligence under § 1-3-107 in light of the assurances of Summit's agent. However, we note that in general the act of a third person in concealing a cause of action against a defendant does not prevent the running of the statute of limitations in favor of that defendant unless there is an agency relationship between the misrepresenting party and the defendant. *New York Life Ins. Co. v. Nashville Trust Co.,* 292 S.W.2d 749, 764 (Tenn. 1956); L.S. Teller, Annotation, 173 A.L.R. 576 § 10 (2011); 51 Am. Jur. 2d *Limitation of Actions* § 167 (2011); 54 C.J.S., *supra,* § 141; 31 Williston, *supra,* § 79:42, at 439. The record reflects no such relationship in this case.

[¶35] We see no reason that misrepresentations by an agent of Summit should extend the statute of limitations as to Kuzma. We will therefore affirm the district court's decision granting summary judgment to Kuzma.

**CONCLUSION**

[¶36] We find that there are genuine issues of material fact as to whether the Moats exercised due diligence to discover errors allegedly made by Appellee Summit

(Professional Assistance L.L.C.), and we therefore reverse the district court's summary judgment. We also find that Appellee P. Olen Snider, Jr., failed to present a prima facie case that he was entitled to summary judgment, and we also reverse the district court's summary judgment as to him. We find that the district court correctly found that there were no genuine issues of material fact as to the claims against Kuzma Success Realty, and we therefore affirm summary judgment against it. We remand for further proceedings consistent with this opinion.